Good morning. May it please the court. I'm Assistant Attorney General Kat Gast and I represent the appellants in this case, several officers from the Arkansas Department of Correction. Your honors, the district court had before it a wholly uncontradicted motion for summary judgment that established two very important things. First, that Ismael Martinez had no idea that on the evening of December 8, 2014, he would be involved in a 15-second physical altercation with another inmate named Anthony Kim. How long a time? I'm sorry, your honor. What time period? He was a 15-second physical altercation with an inmate named Anthony Tanner. And secondly, counsel, is that based on testimony or was there video evidence from surveillance of the barracks? That's based on Mr. Martinez's own deposition testimony. He was directly asked how long the encounter took and he said 15 seconds. And secondly, that there were no facts from which an officer on Mr. Martinez faced a substantial risk of harm at the hands of Anthony Tanner. Faced with this uncontradicted motion for summary judgment in this court's more than 30 years of precedent on surprise inmate attacks, the district court abused its discretion when it cherry-picked inadmissible statements from another inmate's deposition named Ronnie Chapman. Counsel, why does this have to be analyzed as a surprise attack when there were others beside the plaintiff here who were attacked prior to Mr. Martinez, indicating that by the time the assault came to him, that the officials were on notice of danger to potential other inmates? Your honor, we disagreed that the officials were ever put on notice that there was a risk of harm or danger to any inmate until after all of the attacks had ended. And that's when the final inmate, Mr. Walker, approached the control booth and asked to be let out of the barracks. But to answer your honor's first question, is a surprise inmate attack by definition, if we're relying on this court's most recent decision in Patrick Patterson versus Wendy Kelly, for example, is when there are no facts from which the inmate himself could anticipate the attack and also where there is evidence in the record that the inmate is a likely victim of an impending attack, constitutes a surprise inmate attack. And that analysis is found in Patrick Patterson's case and Tucker versus Evans and also in Curry versus Crisp. And it's important because Mr. Martinez and Mr. Chapman, we contend that his statements are inadmissible, but even if you consider what he said, both of those inmates testified that they never knew that they would be involved in a altercation with Mr. Tanner. Do you think that analysis still holds true where you've got multiple attacks in several locations over an extended period of time? Yes, your honor, for a couple of reasons. Mr. Chapman testified that he was in the barracks and he directly perceived inmate Tanner and Mr. Morrison. And the inference that he drew was not that Mr. Morrison was being physically assaulted. The inference that he drew was that Tanner was attempting to wake Mr. Morrison. We know that Mr. Chapman didn't draw a reasonable inference that he was in any danger because after directly perceiving what he says he saw, he said he went back to reading his book. We know that he didn't take cover. We know that he didn't alert security on Mr. Morrison's behalf or his behalf or Mr. Martinez's behalf. He said, and I quote from his of it. The same is true for Mr. Martinez. Mr. Martinez observed the interaction between Tanner and Mr. Chapman. And Mr. Martinez says, I went over to assist Mr. Chapman after Tanner left. I wasn't aware he was going to come back to the first tier. The words he used is that I was completely caught off guard. He didn't know that he would be assaulted by Anthony Tanner. And so there are no facts from which the inmates inside the barracks drew the inference that they faced a risk of harm. Surely there is no evidence that the officer standing outside of the barracks should have drawn any other conclusion. Isn't the concept of surprise attack from the perspective of the prison guard, not the victim? In Patrick Patterson, this court held that Mr. Patterson's inability to eighth amendment liability. And then went on to say that to the extent that Mr. Patterson alleged that the officer's failure to supervise his barracks supported eighth amendment liability that at the most that constituted gross negligence. And so we have decisions, both analyzing surprise inmate attacks, your honor, from both the inmates perspective and the officer's perspective in that regard. Turning to the second point, the district court also abused its discretion because it applied an incorrect eighth amendment standard. And so even if this court considered, and let me go back just briefly, Mr. Chapman's statements about what went on on the second tier, what the officer saw on that evening is completely speculative and in conjecture. And this court in at least three surprise inmate attack cases has held that an inmate can't overcome qualified immunity. And I'm speaking specifically about Glaze versus Byrd, Miller versus Solemn, and Prosser versus Ross by putting forth subjective, I'm sorry, speculative and conclusory allegations about the subjective portion of an eighth amendment analysis. But the court further erred because it employed a negligence like standard when it concluded that the officer should have known that Mr. Martinez faced a substantial risk of harm. And it's well settled that a constructive knowledge or should have known standard is not the appropriate eighth amendment standard. The officers have to actually know about the risk of harm and then disregard it. In Jackson versus Everett, this court said, while it may be no cause for commendation, an officer's failure to perceive a risk that he should have does not support eighth amendment liability. And so turning to the facts of the case, there is no evidence that the officers could have drawn a reasonable inference that any inmate faced a substantial risk of harm. I've already mentioned that the inmates themselves didn't draw the inference while they were inside the barracks. There is evidence in the record that Mr. Martinez and Mr. Tanner never had any altercations. Mr. Martinez never filed a grievance against Mr. Tanner. There is no evidence that any officer knew that Mr. Tanner posed a threat to any inmate in eight barracks, including Mr. Martinez. Let's see, was Mr. Martinez only one of the persons who was attacked in this rampage by Mr. Tanner? Yes, he was one of the inmates. Yes, your honor. And the whole thing took how long from the first attack to the intervention of staff? I think the record indicates 15 minutes. I would like to point the court, we disagree with the characterization of the assault as the incidents as a rampage and point, for example, respectfully. For want of a better term, Mr. Tanner took action that he shouldn't have taken. I agree, your honor. We'll phrase it down to that. He engaged in untoward conduct. I agree. What he did was not acceptable, but characterizing it as a rampage gives the indication that perhaps something more overt was occurring that should have given the officers some knowledge that they didn't have. And I just again- At this point, we're looking at things according to the allegations as they've been made and not deciding the facts. And if this turns into a fact dispute, then basically we're not going to qualify immunity. So I think the best approach is let the facts be as they're alleged. And if they're alleging it was an attack, then let's see if that bears out. And I don't think there's any- Your honor, I agree that the court is not engaging in a factual dispute, but the court is not obligated to accept evidence that's not properly supported by the record. And we make those arguments in our brief. But even considering Chapman's statements and Mr. Martinez's undisputed evidence, there was no evidence from which the officers outside of the barracks could have drawn a reasonable inference that Mr. Martinez was the likely victim of an impending attack. Now, one of the witnesses says they saw the officers looking or believed that the officers could see what was occurring. Is there any evidence that the officers were aware of what was occurring? There is no evidence of that. And a belief is that type of speculation that this court has said cannot overcome a motion for summary judgment. The officers in the record have both said that they did not see any of the inmates being attacked and they were not aware of the incident until Mr. Walker approached the control booth. It's undisputed that at the time that Mr. Walker was approaching the control booth, Mr. Martinez's incident had already ended. He was simultaneously attempting to alert security, but that's after all of the incidents had completed. And there wouldn't have been sufficient time for the officers to intervene at that point because his incident, his 15-second incident had already occurred. In other words, the damage had been done by that time, if we accept it in those terms. Yes. And they weren't aware of the damage prior to that. And that's what insulates them from Eighth Amendment liability. They couldn't prevent that, which they did not know anything about, I suppose your argument might be. Yes, Your Honor. There certainly were no obligation to prevent that, which they didn't know about. Yes, Your Honor. And they have to actually be aware of the harm and they were not. I'd just like to point out that even considering the evidence, it's undisputed that neither Mr. Chapman, nor Mr. Morrison, nor Mr. Martinez attempted to alert security about Tanner's movement about the barracks or anything that they allege that they saw or heard prior to the termination of all of the incidents. How did the staff become aware of what had happened? An inmate approached the control booth and asked for medical attention. And how long after that was there an intervention? Immediately. The officers removed that inmate out of the barracks. And then the radio, the lieutenant, who then went into the barracks to secure Mr. Tanner. But at that point, all of the incidents, including Mr. Martinez's, had already ceased. Judge Wolman, if you have a question, I'm happy. I meant to my rebuttal, but I'm happy to answer. From Judge Moody's opinion, okay, according to Chapman, defendants Perry, Baker, and Williams were standing up there in the control booth, watching in the window the whole time. Well, we'll see what your colleague says about, what your opponent says about that. Yes, and I'll come back on rebuttal. Well, no, no, but... To answer your question, that's speculative. Oh, in other words, it was not scriptural truth, what Chapman said. Correct. In this court, not engaging in a factual dispute doesn't have to accept... The implausible. Facts that are wholly contradicted by the record. And the record indicates that later, at appendix page 142, Mr. Chapman concedes that he can't give any testimony about what another person saw on that night, another officer saw on that night. Well, I wonder why Judge Moody accepted it as being a veritable recitation of what actually happened. We wonder that too, and we asked Judge Moody to reconsider the denial of qualified immunity and presented supplemental evidence, and he declined to do that. I see. Thank you. I mean... I'll reserve the remainder of my time. Thank you, Your Honor. Mr. Angel. Thank you, Your Honor. May you please court Michael Angel for the epilee. I'm going to move this up, and we'll charge up the next. Your Honor, the... Your Honors, the state, in support of their motion for summary judgment, gave an incomplete deposition portion of inmate Chapman, and that's what Judge Moody relied on. It was only after the summary judgment denial... The motion was denied when the state supplemented the record to make this argument here. Judge Moody had the evidence based on what the state provided. So in connection with their summary judgment motion, they provided evidence that basically demonstrated that there was a material issue of fact, and that's what it got denied. Ergo, Chapman saying he saw the three defendants in the window watching the whole time the attacks occurred. Now, the judge woman has said that there was a... Characterized a rampage, and then Ms. Hyatt says it was a surprise attack. What happened was, inmate Tanner had an altercation with the first inmate, one of his people he was with, a porter with. Went upstairs, assaulted someone on his floor. The people on the lower floor heard a noise, and then came back down and assaulted Martinez again. So, Martinez was one of the last lines of inmates. So I don't know, how is that a surprise attack? If you want to go by based on what the inmates say... I guess it... One way it might seem that way is, the typical cases we see against prison officials in these circumstances is when an attack occurs, and they've been put on notice that there's a grudge, that there's a vendetta, that there's some... Credible threat that one inmate poses to another, and then they ignore it. And that threat's carried out, and the inmate's are just together, and one rises up against the other, in a manner in which prior to that occurrence, there was no communication to officials to be on alert to the danger that the assaulting inmate opposed to the assaulted inmate. And this case seems to be a little in between. It's not... It's certainly not the one where there was prior notice, but it seems to be quite a bit closer to the surprise attack, when apparently the only possible notice is that they observed some things that they could have interpreted to be... Pose a threat not only to your client, but to others, and to essentially to everyone but Mr. Tanner, and perhaps even to him, because of retaliation. And so it seems that time period of awareness then becomes significant. How long did it take the officials to appropriately respond, and did that delay amount to deliberate indifference? Yes, Your Honor. Now, I want to... My understanding is if they're on notice, and if there's an issue where the person's in jeopardy, then that would have defeated the sovereign immunity claim, but that was denied at the district court level, and now we just have the qualified immunity claim. And the surprise attack, while I would agree the first one, like in an inmate case where someone comes around the corner and they jump them, of course, the prison official, correctional officer, is not duty-bound to prevent that. That's classic surprise attack. But we have, in this case, if it was the first person who was assaulted, sure, surprise attack. Second, third. We're up to the seventh, eighth, ninth inmate who was assaulted. And one of the... How many in total does the record reflect? The verified complaint says eight, and there's something in the record, I think it's actually from Tanner, where he says he assaulted nine, and he went up and down, up and down, assaulting I mean, at a certain point, you have to protect the people in the prison. Now, as an evidentiary matter, we're going back and forth whether or not they had the ability to see inside, but we have, and Ms. Hodge says this is inadmissible hearsay. We have a direct witness. That's classic testimony. That's not hearsay. You have an eyewitness who says, I saw the guards in the control room. They saw the assaults, and they did nothing. Failure to intervene, failure to protect. Their inmates are entitled to be protected from other inmates. This person went after nine inmates, and nothing happened. Not only that, it wasn't in a confined area of one barrack. He went up and down. At what point is there a duty to intervene? I mean, we're just into numbers here. The first four, maybe, and then nine, 10, 15, 20, and then you're just like, well, we just didn't get around to it. The more you describe it, the more I think my description as this being a rampage is probably pretty accurate. There's clear evidence that he was beating up on the elderly, people with diabetic conditions. He was choking older men who were defenseless. My client and Mr. Chapman were younger, but he was going after senior citizens in here, going up and down the barracks and coming after them. So a surprise attack? I don't think that's a surprise attack, Your Honor. There has to be some kind of reasonable nature to the protection here, and I think that's for a trier fact to decide. And then again, as a point, and I was To what extent did they view any of this? The evidence, all we have is the second to last inmate. So Chapman, what she's talking about, Chapman saw another elderly inmate being choked, what he's described as being choked, and then he didn't think anything of it. And then apparently Tanner goes up and then comes back down and starts beating up on Chapman. And Chapman says, this is what they relied on. He looked over and saw the three defendants in the booth looking at this, watching as the altercation occurred. How far into it was that? That's the latter stages of the spree, assault and battery spree. Is it undisputed that this is 15 minutes? That's what it says in the record, 15 minutes. I didn't see anything less than that. So at what point in the 15 minutes does Chapman observe the officers? This is at the later stages. I think this is the last two victims. So he doesn't testify that they saw it from the very beginning? He says they saw him. That's a good question. It says the whole time. The quote is the whole time. Now that's a trier of fact, Judge, the whole time. So that's what he's testifying. That's why we have cross-examination and trials. So if they want to go after Chapman's credibility, that's for them to decide, the jury. It seems to me like we're going back and forth and actually kind of trying the case here. We won't do that. I guarantee it. We won't try the case. You understand my point here. So prima facie case, it's admissible evidence contrary to what Hodge says. I don't see how that's hearsay. He's a fact witness. So you have a fact witness saying as he was assaulted or during the whole time that the guards were witnessing. And then it's hard to say that Martinez was surprised because he saw his bunkmate being assaulted and went to his aid. The testimony was replete that Chapman was bleeding profusely. So it's hard to say that he would be surprised that he was attacked because he just witnessed his bunkmate being attacked. Now there was, I guess, sort of a companion case. One of the other inmates sued and summary judgment was granted in favor of the defendants in that case. Wasn't appealed, Judge. So I'd argue that was wrongly decided. Plus, it's a different footing because I think he testified, Chapman did, in his that he was surprised. Martinez didn't say that. He actually saw Chapman being assaulted. So it's up to whether or not it was a surprise attack. I just, there has to be, under what circumstances would a spree not be a surprise attack? That's my point. Do you have any cases on similar facts? I do. I'm sorry, I have. This is not my area. I stumbled across a case last night and I have a Westlaw side. I'm not sure. I've not been up this court in 20 years. Would you supply us with a 28J with that authority? See, I don't understand that rule. Okay, rule 28J allows you to supplement our appellate record with citation to authority. I have an unpublished decision that's almost, I think it's germane, Your Honor. So you can send us a note through the clerk's office, a 28J letter. It's just usually a one page in which you cite the case that you mentioned and what it stands for. Is it, the fact that it's unpublished, is that relevant? I don't know. It's still a case, but it will give it the weight that unpublished decisions get. Okay, if I could recite that case. In that case, it's COHRS versus Norris. In that case, the allegation was the guard watched the altercation from a control room for 20 minutes and they thought that, and then Judge Arnold decided that was a failure to intervene and that should go to the jury. That's pretty similar, Your Honor. And that wasn't a spree, an assault and battery spree. That was just one actual assault. Here we have multiple assaults up and down and actually this case is much stronger than that. If the jury can decide that the three defendants witnessed the altercations from the control booth and failed to intervene, Your Honor. With that, that's all I have. I'll have to get with one of your law clerks to make sure I know how to do that. Well, you can talk to the clerk's office and they'll- Clerk's office, yes. That's all I have, Your Honor. Thank you, Your Honor. Ms. Hodgkiss, your rebuttal. In my short amount of time, I want to try to address Mr. Angel's arguments first. The deposition, the incomplete deposition that Mr. Angel referenced, the trial court, district court relied on portions of the deposition that the appellants did not rely on. That is, the motion was uncontroverted. Mr. Martinez did not respond. The district court then relied on portions of the deposition that weren't cited, which is what necessitated the supplementation of the record. This court has before it a complete record that demonstrates that Chapman can give no credible, admissible, not credible, excuse me, no admissible evidence about what any officer saw on that night. At appendix page 142, he testifies he doesn't know what any officer saw on that night. Mr. Martinez, in his deposition at appendix page 33, was directly asked, did you know Tanner was going to come back and assault you while you were helping Mr. Chapman? His answer was no. He was completely caught off guard. That is the definition of a inmate attack. And again, what page is that? This is appendix page 33, joint appendix page 33. I understand the court's concern about the number of inmates involved in this assault. That doesn't take it out of the surprise inmate context for several reasons. One, there is no testimony about what happened prior to Mr. Morrison. All speculation about what happened in the one through six assaults. And so you can't impute that knowledge to the officers. It's not in the record. The only direct observation that we have is Mr. Chapman saying I perceive this person to be waking up, shaken by the shoulders. Counsel, what about the verified complaint of Mr. Martinez? Can't the court look at that as well? The district court actually didn't rely on Mr. Martinez's verified complaint, noting that our objections, that we objected to the use of his complaint because it contained inadmissible hearsay. I just want to also point this court to, if the court considers or reads together its Patrick Patterson cases, Patrick Patterson, Tucker versus Evans, and Curry versus Chris, the Tucker versus Evans included multiple inmates assaulting one inmate. The Patrick Patterson decision included, and I've run out of time, may I complete my thought? Yes. The Patrick Patterson decision included a 15 minute incident where this was 15 seconds. And then Curry versus Chris, the court granted qualified immunity when an inmate was murdered in prison during a 30 minute interval. And so reading those decisions together, the fact that Mr. Tanner was able to undercover of night, very secretly assault nine inmates doesn't mean that Mr. Martinez's attack doesn't satisfy surprise inmate attack. And we would ask that this court reverse the district court's denial of qualified immunity based on those decisions. Thank you, Your Honor. Thank you, Ms. Hodgkiss. And thank you also, Mr. Angell. And Mr. Angell, the court would like to note and express our appreciation for your willingness to serve as appointed counsel for Mr. Martinez. And we are grateful. Thank you.